IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TRACY BESSELAAR                 :

    Petitioner,                :

v.                              :      CIVIL ACTION NO. 03-00859-BH-B

RALPH HOOKS,                    :

    Respondent.                :

## REPORT AND RECOMMENDATION

Tracy Besselaar, a state prisoner currently in the custody of respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner challenges the validity of his 1997 conviction by a jury in the Circuit Court of Baldwin County, Alabama, for first degree burglary, for which he received a sentence of life imprisonment without the possibility of parole. (Doc. 1 at 2-3; Doc. 11, Ex. A, Vol. I at 2, 5).

This matter is now before the undersigned Magistrate Judge on petitioner's petition, respondent's answer, briefs, responses, and exhibits filed by the parties, the state court records, various appellate briefs filed by the parties, and opinions and orders of the state appellate courts. Following a careful review of the petition and record, the undersigned finds that an evidentiary hearing is not warranted on the issues.[1] See 28 U.S.C. §

_____

[1]Because Petitioner filed his federal habeas petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). "AEDPA expressly limits the extent to which hearings are

2254(e)(2).

<u>FINDINGS OF FACT</u>

The Alabama Court of Criminal Appeals found the facts of this case to be as follows:[2]

> Harold LaCombe, a resident of Baldwin County, Alabama, reported on October 2, 1996, to the Daphne Police Department that someone had entered his house by kicking in the back door and had then ransacked his house, taking several pieces of jewelry and several guns. The Daphne Police Department investigated the burglary and entered the serial numbers of the

---

permissible, not merely the extent to which they are required." <u>Kelley v. Secretary for Dep't of Corrs.</u>, 377 F.3d 1317, 1337 (11th Cir. 2004). The legal standard for determining when an evidentiary hearing in a habeas corpus case is allowed is articulated in 28 U.S.C. § 2254(e)(2), which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> **(A)** the claim relies on–
>
> **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Petitioner has failed to establish that an evidentiary hearing is warranted in this case.

[2]AEDPA directs that a presumption of correctness be afforded factual findings of state courts, "which may be rebutted only by clear and convincing evidence." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)). "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Id.</u> (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

stolen weapons into the national computer
system for stolen weapons on October 2, 1996.
On the morning of October 3, 1996, Officer
Robert Duff, a police officer for the Mobile
Police Department, questioned and arrested
Charles Ernest Clark on an unrelated charge.
At the time of the arrest, Clark was in
possession of a weapon with a serial number
matching the one reported stolen by LaCombe.
When Officer Duff realized that the weapon was
evidence in a burglary in Baldwin County, he
contacted the Daphne Police Department, who
sent Officer Scott Taylor to Mobile to provide
the requested assistance.

During questioning, Clark admitted that
he and the appellant had broken into LaCombe's
house. According to Clark, the appellant was
wearing black gloves and carrying a weapon
resembling a 9-mm pistol when he kicked in the
back door of LaCombe's house. They searched
the residence and took jewelry and weapons.
Clark told the officers that he and the
appellant had sold a stolen weapon to A.B.
"Cecil" Evans and had sold another stolen
weapon to Michael Reardon. The appellant and
Clark had divided the proceeds from the sales.
Clark told the officers that the last time he
saw the appellant, the rest of the stolen
weapons were in the trunk of the appellant's
vehicle. Clark informed the officers that the
appellant had told him he would not go back to
jail. Clark also told the officers that they
could find the appellant at around 9:00 p.m.
at "Touch One," a business where the
appellant's girlfriend worked. While the
officers were verifying the sales of the
weapons with Evans and Reardon, Clark learned
through a telephone conversation with his
girlfriend that the appellant was aware that
Clark was in jail and that the police were
looking for him. Clark told the officers that
the appellant knew he was a suspect. Clark
accompanied Officers Duff and Taylor and Mike
Smith, another officer for the Mobile Police
Department, to Touch One to identify the
appellant. When the officers arrived at Touch
One, Clark pointed out the appellant's

3

vehicle.  Officers Smith and Taylor got out of
the undercover vehicle, while Officer Duff
tried to position the car to prevent the
appellant's escape.  When Officers Smith and
Taylor approached the appellant's vehicle and
identified themselves as police officers, the
appellant maneuvered his vehicle around the
undercover vehicle and drove out of the
parking lot.  Officers Smith and Taylor got
back into the undercover vehicle and pursued
the appellant with their car's lights and
siren engaged.  The appellant did not pull
over, but continued driving, at a high rate of
speed and in a reckless manner.  The officers
followed the appellant to a dead-end street,
where the appellant abandoned his vehicle and
fled on foot.  Officer Taylor pursued the
appellant on foot while Officers Smith and
Duff stayed with the appellant's vehicle and a
passenger who was in the appellant's vehicle.
The appellant was eventually stopped by other
Mobile police officers who rendered assistance
and was arrested by Officer Taylor.

(Doc.11, Ex. D at 1-2).

Petitioner was indicted by the Baldwin County Grand Jury on
November 15, 1996, and charged with first degree burglary.  (Doc.
11, Ex. A, Vol. I at 1).  On February 19, 1997, Petitioner entered
a plea of not guilty to the charge, and his jury trial commenced on
May 12, 1997, in the Circuit Court of Baldwin County, Alabama, the
Honorable John B. Bush presiding.  (Id. at 1-2).  Petitioner was
represented at trial by attorney J. Russell Pigott.  (Id. at 117).
On May 15, 1997, the jury returned a verdict of guilty and, on
August 7, 1997, Petitioner was sentenced under the Habitual Felony
Offender Act to life imprisonment without the possibility of
parole.  (Id. at 2-3, 5).

4

Petitioner filed a written notice of appeal to the Alabama Court of Criminal Appeals on August 7, 1997. (<u>Id.</u> at 89). Attorney Pigott represented Petitioner on appeal. (<u>Id.</u> at 90). On September 11, 1998, the Alabama Court of Criminal Appeals affirmed Petitioner's conviction by memorandum opinion. (Doc. 11, Ex. D). Petitioner's petition for a writ of certiorari was denied by the Alabama Supreme Court on July 28, 2000. (Doc. 10 at 2).

On February 26, 2001, Petitioner filed a petition for post-conviction relief, *pro se*, pursuant to Rule 32 of the <u>Alabama Rules of Criminal Procedure</u>. (Doc. 11, Ex. H, Vol. I at 103). On June 22, 2001, the trial court denied Petitioner's Rule 32 petition, and Petitioner filed an appeal to the Alabama Court of Criminal Appeals on July 3, 2001. (<u>Id.</u> at 3-8). On January 25, 2002, the Alabama Court of Criminal Appeals affirmed, by memorandum opinion, the judgment of the trial court denying Petitioner's Rule 32 petition for post-conviction relief. (Doc. 11, Ex. K). Petitioner filed a petition for a writ of certiorari with the Alabama Supreme Court, which was initially granted, and then quashed, on November 21, 2003. (Doc. 10 at 3).

On December 18, 2003, Petitioner filed the instant petition for a writ of habeas corpus, setting forth twelve claims in support of his request for habeas relief. (Doc. 1, attachment at 1-62). In his Answer, Respondent acknowledges that Petitioner has exhausted his state court remedies with respect to all of the claims set

forth in his habeas petition and asserts that the state court properly denied relief on all twelve claims on the merits.   (Doc. 10 at 3).

<u>DISCUSSION</u>

For the reasons set forth below, the Court finds that Petitioner is not entitled to habeas relief on the basis of any of these claims.   The Court will now address each of those claims in turn.

I.   <u>Claim 1</u>.

Petitioner argues first in his petition that he is entitled to relief under § 2254 on the ground that his conviction was obtained by evidence unlawfully seized pursuant to an illegal arrest in violation of <u>Alabama Code</u>, § 15-10-1.[3]  (Doc. 1, attachment at 1-5).   According to petitioner, he was arrested, and certain evidence was obtained, within the confines of the City of Mobile, in Mobile County, Alabama, by a police officer employed by the City of Daphne, a municipality in Baldwin County, Alabama.   (<u>Id.</u>). Petitioner argues that the City of Daphne police officer lacked the statutory authority under § 15-10-1[4] to make the arrest and seizure

---

[3] Although petitioner references the Fourth, Fifth, and Fourteenth Amendments in relation to claim 1, his sole argument in support of this claim is that his arrest was unlawful under <u>Alabama Code</u>, § 15-10-1.  (Doc. 1, attachment at 1-5)

[4] This section provides:

An arrest may be made, under a warrant or without a warrant, by any sheriff or other officer acting as sheriff or his deputy, or by any constable, acting within their respective counties, or by any marshal,

6

in the City of Mobile and that "Alabama law [namely, <u>Alabama Code</u>, § 15-10-1] expressly forbids arrests such as the one made here." (<u>Id.</u> at 1-2).

The Court begins its analysis of claim1 with the principle that federal habeas relief for state prisoners attacking their conviction is limited in scope:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody *in violation of the Constitution or laws or treaties of the United States*.

28 U.S.C. § 2254(a) (emphasis added).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of a constitutional dimension." <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982).  Questions of state law rarely have federal constitutional significance because "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983).  Such questions are reviewed in federal habeas proceedings only to determine whether the alleged errors rendered "the entire trial fundamentally unfair."  <u>Id</u>. at 1055.

---

deputy marshal or policeman of any incorporated city or town within the limits of the county.

Petitioner raised this claim in the state court on direct appeal and in his Rule 32 proceedings.  On appeal of the denial of petitioner's Rule 32 petition on this issue, the Alabama Court of Criminal Appeals held:

> Besselaar also contends that his arrest was illegal because a Daphne police officer arrested him in Mobile, outside the officer's jurisdiction.  It appears that three police officers apprehended Besselaar in Mobile; two of the officers were Mobile police officers, and the third was the aforementioned Daphne police officer.  We note that this claim was raised and addressed on direct appeal. Because this claim was raised on direct appeal, Besselaar is precluded from reasserting this claim in a Rule 32 petition. See Rule 32.2(a)(4), Ala. R. Crim. P. Furthermore, Besselaar's claim that the Alabama Supreme Court's decision in _Ex parte Borden_, 769 So. 2d 950 (Ala. 2000), entitles him to relief is incorrect.  Although _Borden_ held that § 15-10-10, Ala. Code 1975, required a Lawrence County warrant be endorsed by a judge or a magistrate of Morgan County before the warrant could be executed in Morgan County, the court, nevertheless, upheld the defendant's arrest, noting that "exigent circumstances justified Borden's arrest by the local officers – who did, in fact, participate in the arrest – even without a warrant."  769 So. 2d at 959-60.  Accordingly, the circuit court correctly concluded that Besselaar's claims concerning his illegal arrest did not warrant relief.

(Doc. 11, Ex. K at 2-3).

Petitioner argues that the Alabama Court of Criminal Appeals erred in upholding his arrest under § 15-10-1 because it misapplied _Ex parte Borden_, 769 So. 2d 950 (Ala. 2000).  (Doc. 1, attachment at 4).  In _Ex parte Borden_, the defendant was arrested in Morgan

County, Alabama, on an arrest warrant issued in Lawrence County, Alabama. Because the warrant had not been endorsed by a judge or magistrate in Morgan County, as required by Alabama Code § 15-10-10, it was not properly "domesticated" and could not support defendant's arrest. The court held, however, that "exigent circumstances justified Borden's arrest," even without a warrant, "by the local officers - who did, in fact, participate in the arrest." Id. at 959-60.

In the present case, the Alabama Court of Criminal Appeals held that, although Petitioner was arrested in Mobile County by Officer Taylor, a City of Daphne police officer, the arrest was lawful because "other Mobile police officers . . . rendered assistance. . . ." (Doc.11, Ex. D at 2). The record supports this finding. (Doc. 11, Ex. A, Vol. III at 302-03).

In order to obtain federal habeas relief on the basis of claim 1, Petitioner must show not only that the state court erred in denying his petition for relief on the basis that his arrest was illegal under Alabama law, but also that the state court's error rendered his entire trial fundamentally unfair. For the precise reasons found by the Alabama Court of Criminal Appeals in its memorandum opinion, this Court agrees that Petitioner's arrest was lawful. There being no error in the state court's decision to deny relief on this claim, the state court's ruling did not deprive Petitioner of fundamental fairness. Thus, claim 1 fails to state

a cognizable federal habeas claim and is due to be denied.


        II. <u>Claim 2</u>.

        Petitioner next argues in his petition that he is entitled to relief under § 2254 on the ground that the trial court erroneously allowed evidence of flight, which rendered his trial unfair, in violation of the Fifth and Fourteenth Amendments. (Doc. 1, attachment at 5). As with claim 1, Petitioner's challenge to the trial court's actions related to the admission of evidence of flight "involve[s] the interpretation and application of state law by the state courts." <u>Lindsey v. Bullard</u>, 2006 WL 1669807, *15 (M.D. Ala. 2006) (rejecting petitioner's habeas challenge to trial court's admission of evidence of flight, stating, "[a] federal court has no authority to re-examine state court determinations on questions of state law."). <u>See also</u> <u>Bundy v. Dugger</u>, 850 F.2d 1402, 1422 n.29 (11th Cir. 1988) (petitioner's habeas claim related to evidence of flight raised state law issues and, thus, was not a basis for federal habeas corpus relief absent a showing that the improperly admitted evidence deprived petitioner of fundamental fairness).

        In reviewing an evidentiary determination of a state trial court, the federal court will "not sit as a 'super' state supreme court." <u>Shaw v. Boney</u>, 695 F.2d 528, 530 (11th Cir. 1983)

(citations omitted).   In <u>Shaw</u>, the Eleventh Circuit explained:

> Unlike a state appellate court, we are
> not free to grant the petitioner relief simply
> because we believe the trial judge has erred.
> The scope of our review is severely
> restricted.  Indeed, the general rule is that
> a federal court will not review a trial
> court's actions with respect to the admission
> of evidence.  [Citations omitted].  A state
> evidentiary violation in and of itself does
> not support habeas corpus relief.  [Citations
> omitted].  Before such relief may be granted,
> the violation must rise to the level of a
> denial of "fundamental fairness."  [Citations
> omitted].
>
> In the context of state evidentiary
> rulings, the established standard of
> fundamental fairness is that habeas relief
> will be granted only if the state trial error
> was "material in the sense of a crucial,
> critical, highly significant factor."
> [Citations omitted]. Moreover, application of
> this standard has been notably one-sided,
> consistent with the reluctance of federal
> courts to second-guess state evidentiary
> rulings.  This court has established a
> well-documented resistance to granting relief
> when a habeas petition alleges a federal claim
> based merely on a state evidentiary ruling.

<u>Id.</u>  Thus, as with claim 1, this claim will be reviewed only to

determine whether the alleged error "render[ed] the entire trial

fundamentally unfair." <u>Carrizales</u>, 699 F.2d at 1055.

The record shows that Petitioner raised this claim on direct

appeal of his conviction, and the Alabama Court of Criminal Appeals

rejected the claim, stating:

> The appellant contends that the trial
> court erred in admitting evidence of the
> appellant's chase and capture by the police

and in instructing the jury on the issue of
flight.   Specifically, the appellant argues
that his flight was irrelevant because, he
says, it was unconnected with the offense
charged and because, he says, any probative
value of the evidence was substantially
outweighed by its prejudicial effect.

> "In a criminal prosecution the state
> may prove that the accused engaged
> in flight to avoid prosecution . . .
> as tending to show the accused's
> consciousness of guilt. . . .
> "The prosecution is generally given
> wide latitude in proving things that
> occurred during the accused's
> flight.
>
> "The primary question is whether the
> incriminating actions of the accused
> were, as judged under the prevailing
> facts, relevant as a basis from
> which to infer that they were
> prompted by a consciousness of guilt
> for the now charged crime.  It has
> been held that the following four-
> step inference should be satisfied
> as a condition precedent to
> concluding that such relevancy does
> indeed exist:  (1) from the
> defendant's behavior to flight; (2)
> from flight to consciousness of
> guilt; (3) from consciousness of
> guilt to consciousness of guilt
> concerning the crime charged; and
> (4) from consciousness of guilt
> concerning the crime charged to
> actual guilt of the crime charged."
> C. Gamble, McElroy's Alabama Evidence,
> § 190.01 (5th ed. 1996) (footnotes omitted).
>
> "'Evidence of flight is admissible
> even though it is weak or
> inconclusive or if several days
> have passed since the commission of
> the crime. . . .  Evidence of
> flight is admissible even though
> that evidence involves the

commission of other crimes by the
accused.'"

Rogers v. State, 630 So. 2d 88, 91 (Ala. 1992)
(citations omitted), aff'd, Ex parte Musgrove,
638 So. 2d 1360 (Ala. 1993), cert. denied, 513
U.S. 845, 115 S. Ct. 136, 130 L. Ed. 2d 78
(1994), citing Beaver v. State, 455 So. 2d
253, 257 (Ala. Cr. App. 1984).

Here, Officers Duff, Smith, and Taylor
testified that, with the assistance of Clark,
they identified the appellant and his vehicle
in a parking lot at approximately 8:30 p.m. on
October 3, 1996. Officers Smith and Taylor
testified that when they approached the
appellant's parked vehicle and identified
themselves as police officers, the appellant
drove away. Officers Smith and Taylor got
back in the undercover vehicle that Officer
Duff was driving, and they pursued the
appellant. Although their car was not marked,
the officers engaged their siren and lights to
signal the appellant to pull over. The
appellant, however, did not stop, but led the
officers on a high-speed chase, which ended on
a dead-end road where the appellant fled on
foot. Additionally, Richard Norman, a friend
of Clark's, testified that he had informed the
appellant earlier on October 3, 1996, prior to
the appellant's flight from the police, that
the police were looking for the appellant in
connection with the stolen weapons. The chase
of the appellant in his vehicle occurred one
day after the burglary.

Initially, the appellant argues that the
evidence indicated that he was not aware when
he fled the parking lot that the men
approaching his vehicle were police officers.
This argument, however, is weakened by the
testimony indicating that even if the
appellant may not have initially recognized
the men as law enforcement officers, the
officers engaged the lights and siren on their
undercover vehicle in pursuit of the appellant
once the high-speed chase began.
Additionally, the appellant's flight occurred

13

the day after the burglary, and the appellant
was aware that the police were looking for
him.  In this case, the evidence concerning
the appellant's flight was sufficiently
connected with the offense charged to show the
accused's consciousness of guilt and was such
that the jury could infer from it that the
appellant was attempting to evade law
enforcement officers in connection with the
offense charged.

We also find that the prejudicial impact
of the evidence did not substantially outweigh
its probative value.  "The trial court's
decision [in balancing the evidence of
flight's probative value against its
prejudicial impact] stands on appeal under an
abuse of discretion standard."  C. Gamble,
<u>McElroy's Alabama Evidence</u>, § 190.01(6) (5th
ed. 1996).  The facts in this case indicate
that the appellant was aware that the police
were looking for him with regard to the
burglary in Baldwin County.  Moreover, the
evidence indicates that because of this
knowledge, the appellant attempted to elude
the police by engaging the officers, who
identified themselves by their blue light and
siren, in a high-speed chase followed by an
on-foot pursuit.  Clearly, the appellant's
conduct in fleeing by both vehicle and foot
was closely connected to the offense charged
and valuable to the state's case.  The
evidence was not of such prejudicial nature
that it should have been excluded; therefore,
the trial court did not abuse its discretion
in admitting the evidence and instructing the
jury on the issue of flight.

(Doc. 11, Ex. D at 11-12).

The Court has reviewed the trial court record, and it supports

the state court's finding that Petitioner knew that he was being

pursued by the police for the burglary committed the previous day.

(Doc. 11, Ex. A, Vol. III at 242-43, 294-95, 300-02; Vol. IV at

14

423-24).  For the precise reasons found by the Alabama Court of Criminal Appeals in its memorandum opinion, this Court agrees that the evidence of flight was properly admitted.  There being no error in the state court's admission of the evidence, petitioner was not deprived of fundamental fairness.  Thus, claim 2 fails to state a cognizable federal habeas claim and is due to be denied.

III. <u>Claim 3</u>.

Petitioner next argues in his petition that he is entitled to relief under § 2254 on nine separate grounds of ineffective assistance of counsel, in violation of his rights under the Sixth Amendment. (Doc. 1, attachment at 14-61).  Respondent answers that each of these claims was considered by the state courts and denied on the merits.

28 U.S.C. § 2254(d) provides that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

15

State court proceeding.

Id.   In Williams v. Taylor, 529 U.S. 362, 412 (2000), Justice

O'Connor, writing for a majority of the Court, recognized that "§

2254(d)(1) places a new constraint on the power of a federal habeas

court to grant a state prisoner's application for a writ of habeas

corpus with respect to claims adjudicated on the merits in state

court."

> A state-court decision is contrary to the Supreme Court's clearly established precedent (1) if the state court applies a rule that contradicts the governing law as set forth in Supreme Court case law, or (2) if the state court confronts a set of facts that are materially indistinguishable from those in a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent.  See Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1519-20, 146 L. Ed. 2d 389 (2000).
>
> A state court decision involves an unreasonable application of Supreme Court precedent "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 120 S. Ct. at 1520.  In addition, a state court decision involves an unreasonable application of Supreme Court precedent "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000).  Moreover,

as discussed above, the Act, as amended, presumes as correct all

16

determinations of factual issues made by a state court and places the burden upon the Petitioner of rebutting such a presumption of correctness by clear and convincing evidence.   28 U.S.C. § 2254(e).

To prevail on any of his claims of ineffective assistance of counsel, Petitioner bears the additional burden of establishing by a preponderance of the evidence that his trial counsel's performance was deficient and that he was actually prejudiced by the inadequate performance.  Strickland v. Washington, 466 U.S. 668 (1984).  The elements to be considered are as follows:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id., 466 U.S. at 687.  Thus, Petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, **and** that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far

between.'"  <u>Van Poyck v. Florida Dep't of Corrections</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting <u>Waters v. Thomas</u>, 46 F.3d 1506, 1511 (11th Cir. 1995)).

An ineffective assistance of counsel claim is examined under the "totality of the circumstances." <u>House v. Balkcom</u>, 725 F.2d 608, 615 (11th Cir. 1984). An attorney's performance is presumed to have been reasonable and must not be examined with the aid of judicial hindsight. <u>Messer v. Kemp</u>, 760 F.2d 1080, 1088 (11th Cir. 1985). A federal court must apply a "heavy measure of deference to counsel's judgments." <u>Singleton v. Thigpen</u>, 847 F.2d 668, 670 (11th Cir. 1988) (quoting <u>Strickland</u>, 446 U.S. at 691).

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

<u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001) (quoting <u>White v. Singletary</u>, 972 F.2d 1218, 1220-21 (11th Cir. 1992)). The Court will consider each of Petitioner's ineffective assistance of counsel claims in turn.

With respect to habeas claims 3A and 3B, Petitioner claims that his trial counsel was ineffective for failing to object to or otherwise challenge the State's knowing use of perjured testimony by witness Charles Clark (claim 3A) and for failing to introduce

18

evidence of Clark's deal with the prosecution (claim 3B).
Petitioner claims that Clark committed perjury when he testified
that the State had not offered him a "leniency deal" in exchange
for his agreement to testify against petitioner at trial.
Petitioner complains that his trial counsel failed to adequately
challenge Clark's testimony and introduce evidence of the leniency
deal. (Doc. 1, attachment at 15-24). Petitioner presented this
same argument to the Alabama Court of Criminal Appeals on appeal of
the denial of his petition for Rule 32 relief, and, in its
memorandum opinion affirming the denial of relief, the court
stated:

> Besselaar contends in part IV of his
> brief that his trial counsel was ineffective
> because he failed to challenge the testimony
> of Charles Clark, a State's witness. Clark
> allegedly testified that he had received
> nothing in exchange for his agreement to
> testify against Besselaar. Besselaar contends
> that the circuit court erred in concluding
> that he had failed to meet his burden of
> proving that he was prejudiced by counsel's
> conduct. We have reviewed the record of
> Besselaar's evidentiary hearing, and we
> concluded that the circuit court correctly
> determined that Besselaar failed to
> demonstrate how he was prejudiced by counsel's
> conduct. At the evidentiary hearing, counsel
> testified that the witness's testimony was
> somewhat ambiguous regarding whether he had
> been promised anything in exchange for his
> testimony. Counsel further testified that, in
> his opinion, the jury could have been misled
> by the witness's testimony that he received
> nothing in exchange for his testimony, and
> thus, the jury might have been more inclined
> to believe Clark's version of what happened.
> However, counsel testified that he did cross-

examine the witness regarding the truthfulness
of his testimony that he had received no
promises of favorable treatment by the State
in exchange for his testimony.   Counsel
admitted that in hindsight, he believed that
he could have attacked the witness's testimony
more vigorously.

Based on our review of counsel's
testimony, we agree with the circuit court's
conclusion that Besselaar failed to meet the
two-prong Strickland test. Given that counsel
did, indeed, challenge the credibility of the
witness's testimony, his representation cannot
[be] said to be deficient.   Moreover,
Besselaar has failed to show how he was
prejudiced by counsel's performance.   Nothing
counsel could have done would have prevented
Clark from testifying.   Moreover, counsel
presented testimony from several defense
witnesses that directly refuted Clark's
testimony.   The credibility of the witnesses
was a question for the jury to determine.
Counsel's performance was not ineffective with
regard to this claim.

(Doc. 11, Ex. K at 4-5).

Having reviewed the record in this matter, the Court agrees

with the Alabama Court of Criminal Appeals that Petitioner failed

to establish that he was entitled to relief on these claims.

Assuming arguendo that Petitioner's trial counsel was deficient for

failing to challenge more vigorously Clark's testimony that he

received no promise of leniency from the State in exchange for his

testimony against Petitioner, Petitioner has failed to show that

counsel's error was "so serious as to deprive the defendant of a

fair trial, a trial whose result is reliable" and that "there is a

reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

The record in this case shows that, although Petitioner's trial counsel did not vigorously challenge Clark's testimony that he received no promise of leniency from the State in exchange for his testimony against Petitioner, or present evidence of a leniency deal between Clark and the prosecution in exchange for Clark testifying against petitioner, Petitioner's trial counsel did cross-examine Clark at length about inconsistencies in his trial testimony implicating petitioner as his accomplice. (Doc. 11, Ex. A, Vol. I at 166-87). In addition, Clark admitted on direct and cross examination that he told Petitioner's mother and Petitioner's girlfriend that Petitioner had nothing to do with the burglary, although he claimed at trial that he merely lied to them. (Id. at 153-54, 184-85). Petitioner's trial counsel also secured admissions from Clark that he lied more than once to the police about his own involvement in the burglary. (Id. at 169-70, 185).

Moreover, in addition to Clark's testimony implicating the Petitioner, the record contains testimony from A.B. Evans, a witness who testified that, on the day of the LaCombe burglary, Petitioner and Clark sold him a gun that was stolen from the LaCombe house. (Id., Vol. III at 222-25, 227). Another witness, Richard Norman, testified that, on the day of the LaCombe burglary, he saw the stolen guns in Petitioner's car, and he accompanied

21

Petitioner and Clark to sell one of the stolen guns to a friend of his. (Id., Vol. III at 235-40). There was also testimony from the arresting officer that, the day following the burglary, the police found gun manuals stolen from the LaCombe residence in Petitioner's car. (Id., Vol. III at 303-09). Given the totality of this evidence, Petitioner cannot establish that but for his counsel's failure to vigorously challenge Clark about the leniency from the state, the outcome of this case would have been different. Therefore, Petitioner has failed to establish ineffective assistance of trial counsel with respect to habeas claims 3A and 3B.

With respect to habeas claim 3C, Petitioner claims that his trial counsel was ineffective for failing to challenge false statements by the prosecutor that effectively nullified his alibi defense. (Doc. 1, attachment at 25). Petitioner argues that the prosecutor's theory that the burglary took place between noon and 1:00 p.m. on October 2, 1996, during which time petitioner had no alibi, was not supported by the evidence. (Id. at 29). Petitioner presented this same argument to the Alabama Court of Criminal Appeals on appeal of the denial of his petition for Rule 32 relief, and, in its memorandum opinion affirming the denial of relief, the court stated:

> Besselaar contends in part V of his brief that his trial counsel was ineffective because he failed to object when the prosecutor argued facts not in evidence during closing argument.

He claims that the circuit court erred in concluding that Besselaar had failed to establish how he was prejudiced by counsel's performance.

We have reviewed the transcript of the evidentiary hearing and conclude that the circuit court's finding is supported by the record. Although counsel admitted that he did not object to the prosecutor's argument, this omission does not establish that counsel was ineffective. A defendant is not entitled to an error-free trial, and the fact that counsel made a mistake is not enough to show that his performance was ineffective. See Saffold v. State, 570 So. 2d 727 (Ala. Crim. App. 1990). In any event, this Court has held that "'[d]uring closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.'" Coral v. State, 628 So. 2d 954, 985 (Ala. Crim. App. 1992), aff'd, 628 So. 2d 1104 (Ala. 1993), cert. denied, 511 U.S. 1012 (1994) (quoting Rutledge v. State, 523 So. 2d 1087, 1100 (Ala. Crim. App. 1987), rev'd on other grounds, 523 So. 2d 1118 (Ala. 1988)). Thus, while the State's argument may have undercut Besselaar's alibi, the prosecutor was, nevertheless, entitled to present his impressions from the evidence. Accordingly, the[r]e was no [basis] for any objection by trial counsel. Therefore, counsel's performance was not ineffective with regard to this claim.

(Doc. 11, Ex. K at 5-6).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner has failed to establish that he is entitled to relief on this claim. Given the equivocal nature of Clark's testimony about the time of

the burglary,[5] this Court agrees with the Alabama Court of Criminal Appeals that the prosecutor was free to argue that the burglary may have occurred earlier than Clark had testified.  Moreover, even assuming that the prosecutor's argument about the time of the burglary was improper and that counsel was deficient for not interposing an objection, given the evidence in this case implicating Petitioner in the burglary, Petitioner has failed to show that the alleged error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Strickland, 466 U.S. at 687, 694.   Therefore, Petitioner has failed to establish ineffective assistance of trial counsel with respect to habeas claim 3C.

With respect to habeas claim 3D, Petitioner claims that his trial counsel was ineffective for failing to call him to testify at the pretrial suppression hearing regarding the circumstances surrounding his "flight" from police when he was arrested.  (Doc. 1, attachment at 32).  Petitioner claims that he should have been allowed to testify that he did not realize that the people chasing him were police, and, therefore, his flight was justified and

---

[5]

 When asked what time petitioner picked him up and took him to the LaCombe residence, Clark testified: "probably about one o'clock, I believe." (Doc. 11, Ex. A, Vol. I at 123-24).  Clark further testified that he could not remember the time exactly and stated that he "believe[d]" it was "around one."  (Id.).

should be suppressed.  (_Id._ at 33-34).  Petitioner presented this same argument to the state trial court in his Rule 32 petition, and the court denied his petition for Rule 32 relief, stating that, after reviewing all of the evidence incriminating Petitioner, even if trial counsel "had done all that Defendant complains was omitted," it was not more likely than not that the result would have been any different.  (Doc. 11, Ex. H, Vol. I at 5-6).  The Alabama Court of Criminal Appeals affirmed the trial court's denial of Petitioner's Rule 32 relief without specifically writing to this claim.  (Doc. 11, Ex. K at 6-7).

Having reviewed the record in this matter, the Court agrees with the state trial court that Petitioner has failed to establish that he is entitled to relief on this claim.  The record shows that, at the suppression hearing, Petitioner's trial counsel secured admissions from the arresting officers through cross-examination that, when they first began pursuing Petitioner, they were driving an unmarked police vehicle, and they were not wearing police uniforms.  (Doc. 11, Ex. A, Vol. IV at R.35-36; R.65-66).  Thus, even without Petitioner testifying, the trial court was aware of the circumstances relied upon by Petitioner to justify his flight.  Moreover, given the other evidence linking Petitioner to this crime, as outlined above, even assuming that trial counsel was deficient for not calling Petitioner to testify at the suppression hearing regarding the circumstances of his flight, Petitioner has

failed to show that this error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Strickland, 466 U.S. at 687, 694.   Therefore, Petitioner has failed to establish ineffective assistance of trial counsel with respect to habeas claim 3D.

With respect to habeas claim 3E, Petitioner claims that his trial counsel was ineffective for failing to advise him of the full nature and scope of his right to testify at trial in his own behalf.  (Doc. 1, attachment at 36).  Petitioner presented this same argument to the Alabama Court of Criminal Appeals on appeal of the denial of his petition for Rule 32 relief, and, in its memorandum opinion affirming the denial of relief, the court stated:

> Besselaar contends in part VI of his brief that his trial counsel was ineffective because, he claims, counsel failed to fully apprise him of his right to testify at trial. Alternatively, Besselaar argues that his counsel refused to allow him to testify at trial. The circuit court concluded that counsel did not prevent Besselaar from testifying; rather, the court determined that counsel merely advised Besselaar that he believed it would not be a good idea to testify in light of his prior convictions, and that Besselaar followed counsel's advice.
>
> The court's finding is supported by the record. It appears that Besselaar was, in fact, apprised of his right to testify. However, counsel stated that he advised

Besselaar that he should not testify because if he did so, the State would be able to impeach him with evidence of his prior felony convictions. When reviewing a claim of ineffective assistance of counsel, this Court indulges a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State, 629 So. 2d 6 (Ala. Crim. App. 1992), cert. denied, 511 U.S. 1100 (1994); Luke v. State, 484 So. 2d 531 (Ala. Crim. App. 1985). Moreover, this Court should avoid using "hindsight" to evaluate the performance of counsel. Instead, we must consider the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance. Hallford, 629 So. 2d at 9; see also, e.g., Cartwright v. State, 645 So. 2d 326 (Ala. Crim. App. 1994). Given Besselaar's criminal history, counsel was not ineffective when he advised Besselaar that he should not testify at trial.

Doc. 11, Ex. K at 6-7).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner has failed to establish that he is entitled to relief on this claim. Petitioner acknowledged at his Rule 32 hearing that his trial counsel explained to him that, if he testified, the State was going to bring up Petitioner's past felony convictions and "what we'd like to do is avoid that because that could be prejudicial to you." (Doc. 11, Ex. H, Vol. III at R-70-71, R-191). Petitioner's trial counsel testified at the Rule 32 hearing that the only reason that he did not want Petitioner to testify was the fact that he had five prior felony convictions, and he would be impeached with those convictions. (Id., Vol. III at R-191; Vol. IV at R-328). Thus,

27

the state court's finding that Petitioner's trial counsel advised him not to testify at trial is clearly supported by the record.

Petitioner argues in his habeas petition, however, that he wanted to testify against advice of counsel so that he could establish his alibi. (Doc. 1, attachment at 37-38).  The record shows that, although trial counsel did not call Petitioner to testify about his alibi, trial counsel presented evidence of Petitioner's alibi through various witnesses who testified that they had seen Petitioner around the time of the burglary, thus supporting Petitioner's theory that he could not have committed the burglary.  Petitioner argues that he also wanted to make the jury aware that, at the time of the alleged burglary, he was working a full time job, taking college classes, and engaged to be married. (Doc. 1, attachment at 36-37).  The record shows that Petitioner's girlfriend testified that she and Petitioner were engaged to be married, and Petitioner's mother testified that he was doing construction work at the time of the burglary, although she did not know Petitioner's work schedule.  (Doc. 11, Ex. A, Vol. IV at 477, 487).  Given all of the circumstances of this case, particularly Petitioner's five prior felony convictions, including multiple convictions for burglary and theft of property (id., Vol. I at 35), counsel's advice to Petitioner not to testify at trial was reasonable.  Moreover, assuming that trial counsel failed to explain to Petitioner that he had the right to testify against the

advice of counsel, Petitioner has failed to show, under the circumstances of this case, that this error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694. Therefore, Petitioner has failed to establish ineffective assistance of trial counsel with respect to habeas claim 3E.

With respect to habeas claim 3F, Petitioner claims that his trial counsel was ineffective for failing to present evidence proving that the jury was exposed to extraneous evidence of Petitioner's pending collateral criminal charges. (Doc. 1, attachment at 45). Petitioner presented this same argument to the Alabama Court of Criminal Appeals on appeal of the denial of his petition for Rule 32 relief, and, in its memorandum opinion affirming the denial of relief, the court stated:

> Likewise, in Part VIII of Besselaar's brief, he contends that his counsel was ineffective because, he claims, counsel failed to prevent the jury from being exposed to "prejudicial extraneous evidence." Again, this claim was presented as a substantive claim on direct appeal and rejected by this Court. The substantive claim did not constitute reversible error; therefore, the circuit court did not err in finding that Besselaar had failed to establish that he was prejudiced by counsel's conduct.

(Doc. 11, Ex. K at 7).

The substantive claim referred to by the Alabama Court of

29

Criminal Appeals in the Rule 32 proceedings was Petitioner's claim on direct appeal that the trial court erred in denying his motion to dismiss the indictment because the jury was prejudiced by evidence of collateral criminal charges pending against Petitioner. Specifically, Petitioner argued that the posting of a court docket sheet in an area where the jury congregated during breaks, which listed several other cases against Petitioner, improperly presented unfair, prejudicial evidence to the jury. (Doc. 11, Ex. D at 7). The Alabama Court of Criminal Appeals affirmed the trial court's denial of Petitioner's motion to dismiss on this ground, stating:

> The morning of the third day of trial, the appellant informed the trial court, on the record, that one of his witnesses had observed a juror during a break the prior afternoon looking at the bulletin board that posted a court docket sheet listing several of the appellant's pending criminal cases. The appellant argued that the presence of the court docket sheet in an area frequented by the jurors may have presented extraneous evidence of his collateral bad acts and unfairly prejudiced the jury against him.
>
> When the trial court was informed of the posted court docket sheet, it [made] the following findings:
>
>> "It is my memory that the docket was placed or found located on a bulletin board outside the courtroom but it was inside the metal detector as best I recall where it was not easily seen. As a matter of fact, I wasn't aware a bulletin board was there at all myself and I walked by this door numerous times during the course of this week until it was pointed out

30

yesterday afternoon after we took a
break by defense counsel.

"To the extent that it matters,
maybe the document might ought to be
made a part of the record.  I'm not
sure   how   to   do   that   but
nevertheless.  This document on the
front  page  is  styled  Motion  for
Amended  Trial  Priority  indicates
that  there  are  three  dockets.   At
the top of the heading it says <u>State
of Alabama v. Tracy Besselaar</u>, et
al., Criminal Docket Number 1.  And
the case number and it lists five
case numbers and then says et al.

"Immediately below that it has
William   F.   Powell,   II,   et   al.
Criminal Docket 2, six case numbers
and then et al.  Then under that it
has  Webb  McCarty,  et  al,  Criminal
Docket  3,  and  list[s]  three  case
numbers and then et al.

"Second  page  is  much  the  same
in heading.  You have to go to the
fourth  page  of  the  document  to  be
any  indication  that  Mr.  Besselaar
may have more than one case.  And
(sic) the average lay person I don't
think that this document would mean
much  of  anything  much  less  suggest
that the defendant in this case has
got a whole bunch of cases pending
against him.

"If defense wishes to press the
issue  at  the  conclusion  of  this
trial I will do individual voir dire
on each and every juror and find out
if they read it and knew what it
meant.  I think that's silly but if
you wanted to – I'm not going to
stop the trial. . . .

"Y'all  can  think  about  it  if
you want me to do individual voir

31

dire upon the conclusion of the trial I will be happy to stay here another week and do it if you want to.

"Let me say this. I don't remember that any of the prospective jurors indicated they have any legal training or they are familiar with court dockets or know how to read them or even know what the heck this means.
"But any way I will deal with it in that manner. If you want to y'all can make the call." ®. 468-70).

The record reflects that the appellant did not raise this issue again or request that the trial court conduct individual voir dire at the conclusion of the trial.

The trial court is in the best position to observe the alleged prejudicial act, to determine its effect upon the jury, and to determine an appropriate remedy. Dixon v. State, 476 So. 2d 1236 (Ala. Cr. App. 1985). The granting of "[a] motion for a mistrial [and other extreme remedies, like dismissal of the charges,] implies a miscarriage of justice and should only be granted where it is apparent that justice cannot be afforded." Dixon, 476 So. 2d at 1240.

Here the appellant merely raises the possibility that jurors may have observed the posted court docket sheet and has failed to prove that the jury was "tainted with prejudice." There was no showing that any juror had actually read the docket sheet. The appellant, in his objection, stated that a juror had been observed standing at the bulletin board, where in addition to the docket sheet, an article from Reader's Digest magazine was posted. There is nothing in the record to support the appellant's claim of prejudice, and we will not speculate as to these matters based on the evidence before us.

32

We find no clear abuse of the trial court's discretion.

"'[D]ue process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.'" Robinson v. State, 621 So. 2d 389, 393 (Ala. Cr. App. 1993), quoting, Samuels v. State, 584 So. 2d 958, 961 (Ala. Cr. App. 1991), cert. denied, 584 So. 2d 963 (Ala. 1991). The appellant has failed to make a showing that his right to a fair, unbiased jury was violated. We are satisfied, based on the record before us, that the trial court's findings and actions in this situation were sufficient to the court to determine that the jury was not prejudiced.

With regard to the appellant's argument that the trial court erred in failing to conduct a reasonable investigation into these alleged instances of prejudice, we note that the appellant did not request or encourage voir dire of the jury, because he feared further "ringing the bell" and that, if the jurors were unaware of his other pending cases, questioning would inform them of the existence of these cases. ®. 465). The trial court offered to conduct individual voir dire of the jurors at the close of the trial, but the appellant did not avail himself of the opportunity to pursue this matter. "[A] party cannot allege as error proceedings in the trial court that were invited by him or were a natural consequence of his own action. . . . A defendant cannot invite error by his conduct and later profit by the error. Fountain v. State, 586 So. 2d 277, 282 (Ala. Cr. App. 1981). Here, the appellant had ample opportunity to request that the trial court individually voir dire the jury to determine any prejudice, but did not do so. He cannot now profit from his own silence.

(Doc. 11, Ex. D at 9-11).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals in the Rule 32 proceedings that Petitioner has failed to establish that he is entitled to relief on this claim.  The record shows that, after discussing the matter of the docket sheet with the judge, Petitioner's trial counsel chose not to voir dire the jurors at that time because of the risk of calling further attention to the fact that Petitioner had other cases pending against him.  (Doc. 11, Ex. A, Vol. IV at 465).  Under the circumstances, trial counsel's decision was reasonable.  Although trial counsel could have asked the trial court to voir dire the jury on this issue at the conclusion of the trial, the evidence showed, and the trial judge found, that the docket sheet was not likely to have been seen, or if seen understood, by any of the jurors.  Therefore, even if the Court were to assume error in failing to make this request, Petitioner has failed to show that this alleged error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland</u>, 466 U.S. at 687, 694.  Therefore, Petitioner has failed to establish ineffective assistance of trial counsel with respect to habeas claim 3F.

With respect to habeas claim 3G, Petitioner claims that his

trial counsel was ineffective for failing to introduce exculpatory evidence at trial in the form of written transcripts of two recorded telephone conversations with Charles Clark, the State's key witness, in which Clark stated that he lied about Petitioner being his accomplice. (Doc. 1, attachment at 49-50). Petitioner presented this same argument to the Alabama Court of Criminal Appeals on appeal of the denial of his petition for Rule 32 relief, and, in its memorandum opinion affirming the denial of relief, the court stated:

> Besselaar contends in part IX of his brief that his trial counsel was ineffective because, he claims, "counsel failed to introduce exculpatory evidence at trial." Besselaar argues that the trial court erred when it determined that counsel's performance with regard to this claim did not prejudice his case.
>
> The alleged exculpatory evidence referred to by Besselaar consists of transcripts of two recorded telephone conversations. ©. 199-200 and 201-212). We have reviewed the record of Besselaar's direct appeal. These two transcripts were presented to the trial court as exhibits in support of Besselaar's motion for a new trial. The new-trial motion stated that the two conversations were "newly discovered evidence" that were supplied to counsel by witnesses after Besselaar's trial. Therefore, because the evidence did not exist until after Besselaar's trial, trial counsel cannot be said to have been ineffective by failing to offer the evidence for admission at trial. Accordingly, the circuit court correctly concluded that Besselaar had failed to meet his burden of proof under Strickland.

(Doc. 11, Ex. K at 8) (footnotes omitted).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner has failed to establish that he is entitled to relief on this claim. Assuming that the transcripts were "newly discovered" evidence that surfaced after the trial, the Alabama Court of Criminal Appeals was correct in finding that trial counsel could not have erred in failing to offer the transcripts into evidence. However, in his habeas petition, Petitioner argues that the transcripts were in the hands of Petitioner's trial counsel during the trial. Petitioner acknowledges that his trial counsel did not want to introduce the transcripts because they contained references to Petitioner having been on parole at the time of the burglary. (Doc. 1, attachment at 52).

Although Petitioner's trial counsel did not introduce transcripts of the telephone conversations between Clark and Petitioner's mother and girlfriend into the record, the record shows that Clark testified at trial that he had told Petitioner's mother and girlfriend that Petitioner was not involved in the burglary. (Doc. 11, Ex. A, Vol. II at 106-08, 128-129). In addition, Petitioner's mother and girlfriend testified to the substance of their telephone conversations with Clark, including the fact that Clark told them that he felt pressured by the police to implicate Petitioner in the burglary and that Clark, not Petitioner, had left incriminating evidence from the burglary in

36

Petitioner's car.  (Id., Vol. IV at 475-76, 483, 492-95).
Therefore, this information was before the jury, even if the
transcripts were not.  Assuming, *arguendo*, that trial counsel erred
in not seeking to have a redacted transcript of the telephone
conversations admitted into evidence, Petitioner has failed to show
that this error was "so serious as to deprive the defendant of a
fair trial, a trial whose result is reliable" and that "there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 687, 694.  Therefore, Petitioner has failed
to establish ineffective assistance of trial counsel with respect
to habeas claim 3G.

     With respect to habeas claims 3H and 3I, Petitioner claims
that his trial counsel was ineffective for failing to request jury
instructions addressing his failure to testify and the proper
evaluation of accomplice testimony.  (Doc. 1, attachment at 56-58).
Petitioner presented these arguments to the Alabama Court of
Criminal Appeals on appeal of the denial of his petition for Rule
32 relief, and, in its memorandum opinion affirming the denial of
relief, the court stated:

> Besselaar contends in part X of his brief
> that his trial counsel was ineffective
> because, he claims, counsel "failed to request
> proper jury instructions and/or failed to
> object to "improper jury instructions given by
> the court."  Specifically, Besselaar claims
> that his trial counsel did not file requested
> jury instructions on the following principles

of law: (1) that the jury could make no adverse inference from Besselaar's failure to testify; (2) that accomplice testimony should be weighed with caution; and (3) that accomplice testimony required independent corroboration. Besselaar further contends that because the trial court's instructions were "vague" with regard to these principles, trial counsel's failure to request specific instructions prejudiced his defense.

The trial court has broad discretion in formulating its jury instructions, provided those instructions are accurate reflections of the law and facts of the case. <u>Knotts v. State</u>, 686 So. 2d 431, 456 (Ala. Crim. App. 1995), aff'd, 686 So. 2d 486 (Ala. 1996); <u>Clark v. State</u>, 621 So. 2d 309, 324 (Ala. Crim. App. 1992). Moreover, the trial court's oral charge to the jury cannot be viewed in bits and pieces, but must be viewed in its entirety. <u>Jones v. State</u>, 644 So. 2d 1336, 1338 (Ala. Crim. App. 1994).

Besselaar has failed to meet his burden of proving that he was prejudiced by counsel's performance, given that these principles of law were adequately covered in the court's oral charge. Even if counsel had filed written requested jury instructions on these issues, there was no guarantee that the trial court would have given the proposed instruction. "The refusal of a requested written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge. . . ." Rule 21.1, Ala. R. Crim. P. See also <u>Weaver v. State</u>, 682 So. 2d 488, 491 (Ala. Crim. App.), cert. denied, 682 So. 2d 493 (Ala. 1993). Accordingly, the circuit court correctly concluded that Besselaar was not prejudiced by counsel's performance in this regard.

(Doc. 11, Ex. K at 8-9).

Having reviewed the record in this matter, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner has failed to establish that he is entitled to relief on these claims. Petitioner argues that his trial counsel should have requested a charge instructing the jury that it could draw no adverse inference from his failure to testify.  Although such a charge was not requested, the record shows that the trial court did instruct the jury that:

> Something that is evidence and is to be considered by you as such is the presumption of innocence.  As I have told you, you know in our country a person doesn't have to come in here and prove to you that they are innocent. The law says that for them.  And that presumption goes with everybody, Mr. Besselaar here included, unless and until the State proves to you beyond a reasonable doubt each and every element necessary to constitute guilt.

(Doc. 11, Ex. A, Vol. IV at 517-18).  Likewise, with regard to accomplice testimony, the trial court instructed the jury that:

> In this case you have been presented with testimony of a person who is alleged to have also been involved in the commission of this crime.  The law of Alabama provides that a person accused of an offense cannot be convicted solely on the uncorroborated testimony of a codefendant.  That is in addition to the testimony of a codefendant, the State must present other evidence proving that the defendant committed the offense charged.

(Doc. 11, Ex. A, Vol. IV at 525-26).

Under the circumstances, trial counsel's conduct in not

requesting further charges on these issues was not unreasonable. However, even assuming, *arguendo*, that trial counsel did err in failing to request further, more specific jury charges on the issues of Petitioner's failure to testify and the evaluation of accomplice testimony, Petitioner has failed to show that this error was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 687, 694.   Therefore, Petitioner has failed to establish ineffective assistance of trial counsel with respect to habeas claims 3H and 3I.

Accordingly, on each of Petitioner's ineffective assistance of counsel claims, the Court finds that Petitioner has failed to establish under the "contrary to" clause of § 2254(d)(1) that the Alabama Court of Criminal Appeals applied a rule that contradicts the governing law a set forth in Supreme Court case law or that the court decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts.

Likewise, Petitioner has failed to establish under the "unreasonable application" clause that the state court, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the

facts in this case.  To the contrary, the decision of the Alabama Court of Criminal Appeals regarding Petitioner's ineffective assistance of counsel claims is completely consistent with the principles outlined in <u>Strickland</u>.  Thus, Petitioner has not established that he is entitled to relief under § 2254(d)(1).

In addition, Petitioner has failed to establish entitlement to relief under § 2254(d)(2) by showing that the decision of the Alabama Court of Criminal Appeals was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  This Court must presume as correct the determinations of all factual issues made by the state court.  28 U.S.C. § 2254(e).  Petitioner has not rebutted that presumption of correctness by clear and convincing evidence.

Accordingly, Petitioner is not entitled to habeas relief on the basis of claims 3A through 3I, and those claims are, therefore, due to be denied.

IV.  <u>Claim 4</u>.

Petitioner next argues in his petition that he is entitled to relief under § 2254 based on the cumulative effect of all of the errors committed at his trial, which, he alleges, deprived him of a fair trial.  (Doc. 1, attachment at 61).  The Court disagrees.

Petitioner presented a similar argument to the Alabama Court of Criminal Appeals on appeal of the denial of his petition for Rule 32 relief, and, in its memorandum opinion affirming the denial

41

of relief, the court stated:

> Finally, Besselaar contends in part XV of his brief that the cumulative effect of his counsel's errors "operated collectively and cumulatively to deny him a fair trial." We [have] previously held that when no single instance of alleged improper conduct constituted reversible error, "this Court will not consider the cumulative effect to be greater error." Crymes v. State, 630 So. 2d 120, 123-24 (Ala. Crim. App.), aff'd 630 So. 2d 125 (Ala. 1993). Therefore, the circuit court correctly rejected Besselaar's claim that the cumulative effect of his counsel's conduct warranted relief.

(Doc. 11, Ex. K at 11).

Petitioner's claim in his habeas petition is that *all* of the errors committed at his trial, not just those of trial counsel, operated collectively to deny him a fair trial in violation of his constitutional rights. (Doc. 1, attachment at 61). Because Petitioner did not present this claim to the state court, only the portion of the claim devoted to the cumulative effect of trial counsel's errors has been exhausted. Therefore, the Court will review the exhausted portion of Petitioner's claim, *i.e.,* the cumulative effect of trial counsel's errors, under § 2254(d)(1) and (2), and the unexhausted portion of Petitioner's claim, *i.e.,* the cumulative effect of all of the alleged trial errors, *de novo*.[6]

---

[6] In its answer, respondent did not raise the issue of Petitioner's failure to exhaust with respect to the expanded portion of claim 4. Therefore, the Court will consider the new, expanded claim on the merits. See Moon v. Head, 285 F.3d 1301, 1315 n.17 (11th Cir. 2002) (where respondent failed to raise Petitioner's failure to exhaust as a defense, the court would

Turning, first, to Petitioner's claim that his trial counsel's errors combined to deny him a fair trial, the Court agrees with the Alabama Court of Criminal Appeals that Petitioner has failed to establish that he is entitled to relief on this claim.   As discussed above, Petitioner has failed to meet the Strickland standard of ineffective assistance of counsel with respect to any of his challenges to his trial counsel's conduct.   Where a petitioner "fail[s] to establish that the violations he alleges were indeed errors, they cannot support a cumulative error claim." U.S. v. Murray, 154 Fed. Appx. 740, 746 (11th Cir. 2005) (unpublished).   Moreover, even if the Court were to assume that trial counsel's performance was deficient as alleged by Petitioner, Petitioner has failed to show that "there is a reasonable probability that, but for [the cumulative effect of] counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.   Therefore, the state court's rejection of Petitioner's cumulative error claim was neither contrary to, nor an unreasonable application of, federal law as determined by the Supreme Court, nor was it an unreasonable

_____

consider the claim on the merits).   In any event, even if respondent had raised Petitioner's failure to exhaust with respect to this claim, the Court would consider the new claim on the merits under 28 U.S.C. § 2254(b)(2), which provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." See also Lafitte v. Johnson, 2000 WL 724159, *2 n.2 (S.D. Ala. May 17, 2000).

determination of the facts in light of the evidence presented.

Likewise, Petitioner's claim that *all* of the errors committed at his trial operated collectively to deny him a fair trial is without merit. "To establish cumulative error, each alleged incident must constitute error in itself, though not necessarily so great as to warrant reversal." <u>Murray</u>, 154 Fed. Appx. at 745 (citing <u>United States v. Preciado-Cordobas</u>, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)). Stated differently, "[c]umulative error necessarily depends upon the finding that constitutional errors occurred during trial and that, although each individual error considered in isolation was no more than harmless error, collectively the errors are so prejudicial that the outcome of the penalty phase is not reliable. A cumulative error argument is actually no more than an extended harmless error analysis." <u>Mann v. Moore</u>, 2006 WL 1151865, *3 (M.D. Fla. 2006) (unpublished). Having reviewed the record in this case at length, the Court finds that neither alone nor combined do Petitioner's allegations of trial errors establish that he was denied a fair trial.

Accordingly, Petitioner is not entitled to habeas relief on the basis of claim 4, and that claim is, therefore, due to be denied.

## CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge is of the opinion that Petitioner's rights were not violated and that his

request for habeas corpus relief should be denied.  It is so recommended.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this **7th** day of **August 2007.**


                      **_____/s/SONJA F. BIVINS_____**
                      **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS**

**AND RESPONSIBILITIES FOLLOWING RECOMMENDATION**

**AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   See 28 U.S.C. § 636(b)(1)(c); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

      A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection. Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.    **<u>Transcript (applicable where proceedings tape recorded)</u>**. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.